IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

MID-STATE SURETY CORPORATION,

    Plaintiff,

v.

EAST BETHLEHEM TOWNSHIP MUNICIPAL AUTHORITY and GANNETT FLEMING, INC., a Delaware corporation,

    Defendants,

v.

PALIOTTA GENERAL CONTRACTORS INC.,

    Additional Defendant.

Civil Action No. 01-0240

JUDGE JOY FLOWERS CONTI

## MOTION IN LIMINE TO EXCLUDE EVIDENCE OF NEGLIGENT MISREPRESENTATIONS UNSUPPORTED BY EXPERT TESTIMONY

AND NOW, comes the Defendant, Gannett Fleming, Inc. ("Gannett Fleming"), by and through its attorneys, WAYMAN, IRVIN & McAULEY, LLC, and files the following **MOTION IN LIMINE TO EXCLUDE EVIDENCE OF NEGLIGENT MISREPRESENTATIONS UNSUPPORTED BY EXPERT TESTIMONY**, and in support thereof avers the following:

1.    The remaining claims for negligent misrepresentation against Gannett Fleming are predicated on several alleged instances of false information or omitted information. More specifically, Mid-State maintains that the published cost estimate and location of the utility lines constitute misrepresentations, and the failure to include a more detailed caution note and the failure to transfer each notation of rock from the Murdock drawings are actionable omissions.

:232688.1

2.  It is well-established in Pennsylvania that expert evidence is required to support a negligence claim founded in professional malpractice. *Lentino v. Fringe Employee Plans, Inc.*, 611 F.2d 474, 480 (3d Cir. 1979); *Welsh v. Bulger*, 698 A.2d 581, 585 (1997). "The expert witness in professional malpractice is necessary to establish the specific standard of care and to assist the jury in its determination of defendant's conformity to the relevant standard. These are matters which are typically beyond the scope of the normal experience of laymen." *Lentino*, 611 F.2d at 480 (citations omitted).

3.  In the present case, the claims against Gannett Fleming for providing faulty information and omitting other information in the design of a sanitary sewer line system all arise in the context of the technical, complicated design process of a large sanitary sewer system and it is certainly beyond the ken of lay people to determine the standard of care for a professional engineer under the circumstances of this case.

4.  Thus, there is no question that the negligent misrepresentation claims against Gannett Fleming sound in professional malpractice and expert testimony is required.

5.  The fact that the claim is specifically styled as negligent misrepresentation should not change the need for expert testimony.

6.  The Supreme Court of Pennsylvania has acknowledged that negligent misrepresentation claims against a professional require evidence establishing a breach of existing industry standards. *Bortz v. Noon*, 729 A.2d 555, 563 (1999).

7.  In *Bortz*, the Supreme Court considered whether the plaintiff home buyers could maintain a negligent misrepresentation claim against a real estate agent who had informed them prior to the closing that the house had successfully passed a septic dye test. In its opinion, the

:232688.1

Supreme Court of Pennsylvania identified three factors on which it based its conclusion that a negligent misrepresentation claim could not be made. The first factor was that "there was no testimony or introduction of other evidence to establish that in 1986, the standard of care in the real estate brokerage business required an agent independently to verify or disclose test results that the broker had not ordered and were not part of the sales purchase agreement." *Id.* at 563.

8. Likewise, in *Barrett v. Newman*, 1995 U.S. Dist. LEXIS 19245 (E.D. Pa. 1995), the United States District Court for the Eastern District of Pennsylvania ruled that plaintiff's negligent misrepresentation claim against a physician could not proceed without expert testimony. *Id.* at 13.

9. Similarly, court decisions in other jurisdictions have required that expert testimony be presented in a negligent misrepresentation claim, including claims against engineers. *Ahern v. Fuss & O'Neill, Inc.*, 78 Conn App. 202, 208 (Conn. App. 2003) (Plaintiff failed to present expert testimony that defendant engineering company breached the standard of care in a negligent misrepresentation claim); *Caldwell v. Overton*, 554 S.W.2d 832, 834 (Tex. App. 1977) (holding that the Plaintiff needed to present expert testimony to prove that a physician deviated from a standard of care in a negligent misrepresentation claim).

10. In the present case, Mid-State has failed to provide the requisite expert opinions through its expert reports to establish that Gannett Fleming's alleged misrepresentations and omissions violated the applicable standards of care.

11. The Plaintiff has not produced any expert evidence to indicate that Gannett Fleming's representations regarding the location of the existing utility lines and its caution note regarding the potential of inaccurate utility line information fell below the applicable standard of care

:232688.1

12. Deciding whether Gannett Fleming acted appropriately in locating the utility lines on its drawings and advising bidders of the potential for inaccurate information necessitates a fundamental grasp of advanced engineering principles, sufficient experience in the field and an extensive understanding of the workings of the One-Call system.

13. A lay person simply does not have the necessary understanding of the information generally maintained by existing utility companies, the common problems with that information, how engineers generally obtain information and indicate it on the drawings, general industry expectations about the accuracy of that information, the engineering industry's expectations regarding contractors' general knowledge of and compliance with the One-Call system and the inherent likelihood of experiencing significant utility line interferences on any project to assess the propriety of Gannett Fleming's conduct.

16. Therefore, expert testimony is necessary and Mid-State's failure to provide an expert precludes Mid-State from seeking a negligent misrepresentation claim based on the alleged incorrect location of the existing lines on the drawings and the alleged negligent omission of a more detailed caution note on the drawings.

17. Likewise, an expert witness is required for Mid-State to establish that, by failing to transfer all notations of rock from the Murdock drawings, Gannett Fleming's actions violated accepted industry practices.[1]

18. Gannett Fleming's failure to transfer all instances of rock resulted from various

---

[1] A comparison of the Murdock drawings and Gannett Fleming drawings shows that Gannett Fleming transferred onto its drawings 29 out of 41 notations of rock. The twelve notations of rock not transferred were all rock outcroppings visible to the naked eye.

:232688.1

engineering and technical considerations, including the fact that certain sewer lines were moved away from the rock indicated in the Murdock drawings, consideration that the rock on the Murdock drawings all represented rock outcroppings visible to the naked eye, consideration of what a normal contractor would do in its inspection of the site, the contract requirements regarding the bidders' site inspections, the fact that this Project was being bid on an "unclassified basis," and other factors at the job site which would indicate to the average contractor, although perhaps not a lay person, that there would be subsurface rock.

19. It would be beyond the ken of the average lay person to decide whether Gannett Fleming's decision not to transfer this rock information qualifies as negligence.

20. Mid-State's failure to provide any expert report establishing that Gannett Fleming violated the applicable standard of care by not transferring all notations of rock from the Murdock drawings should bar Mid-State from making a case that Gannett Fleming committed a negligent misrepresentation or omission by not transferring all of the Murdock notations of rock.

21. Finally, with regard to the cost estimate, David Williamson provides the following "Conclusions" in his expert report:

> The August 1999 advertisement of $3,156,000 was the lowest figure seen in any GF document, including those done six years earlier in 1993, and is less than half of the amount calculated by GF's engineer who oversaw the project through the end of 1998. GF's estimate of $6,575,913 was based on a detailed take off. No such take offs have been produced for any other estimate.
>
> Had GF in fact made major cost reduction changes to the design after the 3/19/96 estimate, it would be normal practice to develop a new estimate to verify the cost reductions. No documents have been produced attesting to the existence of any estimate after 3/19/96.
>
> It must therefore be concluded that GF and EBTMA issued a project for bid which was advertised at $3,156,000, even though they knew, based on the 3/19/96 estimate of $6,575,914, that it would cost more than twice the advertised amount to

:232688.1

perform the work.[2]

> The bidders were misled by the lower $3,156,000 amount. As Mr. Wright testified, Gannett Fleming should have used the $6,575,914 estimate, reduced for any scope changes. This is a matter of basic fairness and honesty and of good and prudent engineering practice.

(See page 13 of Thomas & Williamson Report, attached hereto as Exhibit "A").

22. While making this statement in his report that the $6,575,914 estimate of Kurt Wright should have been used, Mr. Williamson agreed, at his deposition, that he never conducted an analysis of whether Mr. Wright's number of $6,575,914 was a good estimate number. His analysis that Kurt Wright's figure should have been used is based only on the methodology used by Kurt Wright and the "level of the detail." (See pp. 50-51 of David Williamson's Deposition, attached hereto as Exhibit "B").

23. At his deposition, Mr. Williamson was directly asked: "Did you perform your own analysis as to what you believe the engineering estimate should have been?" and his answer was an unqualified "No." (See p. 50 of Exhibit "B").

24. In other words, Mr. Williamson has not found that Jack Rae's estimate of $3,156,000 was an incorrect estimate, he simply opines that the methodology used by Jack Rae did not follow good engineering practices.

25. The preparation of an engineering cost estimate involves application of various engineering principles and is certainly beyond the ken of a lay person.

---

[2] At his deposition, Mr. Williams agreed that he was not capable to testify as to what Gannett Fleming knew.

:232688.1

26. Therefore, without an expert who can sufficiently establish that the estimate itself, as opposed to the methodology used, violates the standard of care, Mid-State cannot establish that the cost estimate qualifies as a negligent misrepresentation.

27. For the above reasons, Gannett Fleming respectfully requests that Mid-State be precluded from introducing evidence in support of its claim that (1) Gannett Fleming's cost estimate constitutes a negligent misrepresentation; (2) Gannett Fleming's drawings regarding utility line locations constitutes a negligent misrepresentation; (3) Gannett Fleming negligently omitted a more specific caution note regarding utilities; and (4) Gannett Fleming committed a negligent misrepresentation or omission by failing to transfer all rock information from the Murdock drawings.

Respectfully submitted,

WAYMAN, IRVIN & McAULEY, LLC

By: _____
Mark J. Gesk, Esquire
Pa ID No. 29392
Paul M. Mannix, Esquire
Pa ID No. 76225
Attorneys for Defendant,
Gannett Fleming, Inc.
1624 Frick Building
Pittsburgh, PA 15219
(412) 566-2970

:232688.1

# THOMAS & WILLIAMSON REPORT

Project:

## CONSTRUCTION OF SANITARY SEWERS
### CONTRACT ONE
### Part A, Part B, Part C, Part D

East Bethlehem Township Municipal Authority

Prepared for:

**Scott D. Cessar**
**Eckert Seamans Cherin & Mellott, LLC**

Prepared by:

*[signature]*

**David M. Williamson, P.E.**
**Thomas & Williamson, LLC**

Date:

**August 25, 2003**



EXHIBIT A

## Summary of Cost Reductions

The following table summarized the calculation presented in *TAB 18 of this report*.

|                   | Total $ Savings |
|-------------------|-----------------|
| Part 1A           | $34,713         |
| Aggr. BF Alternate| 252,160         |
| Part 1B           | 142,675         |
| Part 1C           | 133,055         |
| Part 1D           | 77,850          |
| **TOTAL**         | **$640,453**    |

The total cost savings associated with the scope reductions discussed in this section of the report amounted to only $640,453

This explains only a small portion of the total $3,419,914 difference between the estimated cost of $6,575,914 taken from GF's 3/19/96 estimate and the bid advertisement of $3,156,000 in August, 1999.

### 3.8 CONCLUSIONS

The August, 1999 advertisement of $3,156,000 was the lowest figure seen in any GF document, including those done six years earlier in 1993, and is less than half of the amount calculated by GF's engineer who oversaw the project through the end of 1998. GF's estimate of $6,575,914 was based on a detailed take off. No such take off's have been produced for any other estimate.

Had GF in fact made major cost reduction changes to the design after the 3/19/96 estimate, it would be normal practice to develop a new estimate to verify the cost reductions. No documents have been produced attesting to the existence of any estimate after 3/19/96.

It must therefore be concluded that GF and EBTMA issued a project for bid which was advertised at $3,156,000, even though they knew, based on the 3/19/96 estimate of $6,575,914, that it would cost more than twice the advertised amount to perform the work.

The bidders were misled by the lower $3,156,000 amount. As Mr. Wright testified, Gannett Fleming should have used the $6,575,914 estimate, reduced for any scope changes. This is a matter of basic fairness and honesty and of good and prudent engineering practice.

1    A.    No.
2    Q.    Do you know how many RUS projects Kurt Wright had
3          worked on before this project?
4    A.    Off the top of my head, no.  I believe in his
5          transcript he discusses that, but I can't recall.
6    Q.    Did you perform your own analysis as to what you
7          believe the engineering estimate should have
8          been?
9    A.    No.
10   Q.    Did you provide analysis as to whether you
11         believe Kurt Wright's estimate was a good
12         estimate?
13   A.    I think based on the detail that he went through,
14         it looks like he did the right steps, he did the
15         right engineering things, and it's a pretty good
16         estimate.
17   Q.    Was it something that the form of the estimate
18         looks good to you because it's detailed?
19   A.    It's the level of the detail.
20   Q.    But did you conduct any analysis to figure out if
21         his numbers were good numbers, or did you just
22         determine because of the amount of detail, that
23         it was seemed to be appropriate?
24   A.    Yes.  It certainly is appropriate.  The level of
25         detail that he went through is certainly

|   |    |   |
|---|----|---|
| 1 |    | something that you would expect somebody in his |
| 2 |    | position to go through. |
| 3 | Q. | But did you perform any analysis as to whether |
| 4 |    | his numbers were good numbers? |
| 5 | A. | No.  As the actual unit prices, no. |
| 6 | Q. | In the conclusion part of your original report, |
| 7 |    | under 3.8, it states in the third paragraph, "It |
| 8 |    | must, therefore, be concluded that GF and EBTMA |
| 9 |    | issued a project for bid which was advertised at |
| 10|    | $3,156,000 even though they knew, based on the |
| 11|    | 3/19/96 of $6,575,914, that it would cost more |
| 12|    | than twice the advertised amount to perform the |
| 13|    | work." |
| 14|    | Do you see that?  Did I read that |
| 15|    | correctly? |
| 16| A. | Correct. |
| 17| Q. | Do you know who was primarily responsible from |
| 18|    | Gannett Fleming for preparing the final estimate? |
| 19| A. | I know that Kurt Wright prepared the one estimate |
| 20|    | based on all of his -- this is the guy who |
| 21|    | certainly seems to have known the most about the |
| 22|    | project from all his visits and all the work he |
| 23|    | did.  And then Bob Bible also did the same sort |
| 24|    | of effort.  So that's a pretty good indication |
| 25|    | that those two guys have done the most work and |


## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing **MOTION IN LIMINE TO EXCLUDE EXCLUDE EVIDENCE OF NEGLIGENT MISREPRESENTATIONS UNSUPPORTED BY EXPERT TESTIMONY** has been served on the following counsel of record by first-class U.S. mail, postage pre-paid, or by hand-delivery, this 3 day of March, 2006:

Scott D. Cessar, Esquire
Cornelius J. O'Brien, Esquire
Eckert, Seamans, Cherin & Mellott, LLC
600 Grant Street, 44th Floor
Pittsburgh, PA 15219
(*Counsel for Plaintiff*)

Michael J. Witherel, Esquire
Witherel & Kovacik
966 Perry Highway
Pittsburgh, PA 15237
(*Counsel for East Bethlehem Township*)

Peter H. Thompson, Esquire
618 Beaver Street, Suite 202
P.O. Box 325
Sewickley, PA 15143
(*Counsel for Paliotta General Contractors, Inc.*)

WAYMAN, IRVIN & McAULEY, LLC

_____
Mark J. Gesk, Esquire
PA ID No. 29392
Paul M. Mannix, Esquire
PA ID No. 76225
Attorney for Defendant, Gannett Fleming
1624 Frick Building
Pittsburgh, PA 15219
(412) 566-2970

:232688.1

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

MID-STATE SURETY CORPORATION,

    Plaintiff,

v.                                                                                          Civil Action No. 01-0240

EAST BETHLEHEM TOWNSHIP                          JUDGE JOY FLOWERS CONTI
MUNICIPAL AUTHORITY and GANNETT
FLEMING, INC., a Delaware corporation,

    Defendants,

v.

PALIOTTA GENERAL CONTRACTORS
INC.,

    Additional Defendant.

## ORDER OF COURT

AND NOW, this _____ day of _____, 2006, upon consideration of Defendant Gannett Fleming, Inc.'s foregoing Motion in Limine, it is hereby ORDERED, ADJUDGED and DECREED that said Motion is GRANTED and Mid-State is precluded from introducing evidence in support of its claim that (1) Gannett Fleming's cost estimate constitutes a negligent misrepresentation; (2) Gannett Fleming's drawings regarding utility line locations constitutes a negligent misrepresentation; (3) Gannett Fleming negligently omitted a more specific caution note regarding utilities; and (4) Gannett Fleming committed a negligent misrepresentation or omission by failing to transfer all rock information from the Murdock drawings.

BY THE COURT,

_____ J.

:232688.1